**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE GUARDIAN INSURANCE & ANNUITY COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHOCKALINGAM SUSILA ASHOK, <br><br> Defendant. | Civil Action No. 24-8731 (MAS) (JBD) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon the Guardian Insurance & Annuity Company, Inc.'s ("GIAC" or "Plaintiff") unopposed Motion for Default Judgment against Defendant Chockalingam Susila Ashok ("Defendant") (the "Motion"). (ECF No. 10.) The Court has carefully reviewed Plaintiff's submission and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Plaintiff's Motion.

**I.   BACKGROUND**

  **A.   Factual Background**[1]

This action arises out of a dispute between GIAC and Defendant over a life insurance policy issued to Hariharan Ashok (the "Insured"), under which Defendant, the Insured's father, was designated as the sole beneficiary. (Compl. ¶ 1, ECF No. 1.) On September 12, 2022, the Insured applied for life insurance from GIAC. (*Id.* ¶ 13.) In applying for life insurance, the Insured completed an application and answered a series of questions regarding his health and medical

---

[1] Generally, on a motion for default judgment, the Court assumes all pleadings and allegations of the plaintiff as true. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

history (the "Application"). (*Id.* ¶ 14.) Among others, the Insured answered the following questions:

> In the past 10 years, have you been diagnosed with, treated for, tested positive for, been given medical advice by a member of the medical profession or received a consultation or counseling for . . . high blood pressure, heart murmur, irregular heartbeat, palpitations, heart attack, coronary artery disease, chest pain, or any other disease or disorder of the heart, blood vessels or circulatory system?
>
> Within the past 5 years, have you had a physical exam, check-up of any kind or diagnostic tests performed that were not previously disclosed[?]
>
> Within the past 5 years, have you been advised by a member of the medical profession to have surgery or any diagnostic tests that were not performed[?]
>
> Other than previously stated on this application, are you currently or in the past 5 years have you received medical advice, counseling, or treatment for any medical, surgical, psychological, or psychiatric condition [by] a medical professional or have you been a patient in a hospital, clinic, . . . or other medical facility?

(*Id.* ¶ 15 (alteration in original).) The Insured answered no to each of the above questions and affirmed that any material misrepresentations or omissions could cause the rescission of any issued life insurance policy. (*Id.* ¶ 17.) Based on the Insured's representations, on October 3, 2022, GIAC approved coverage for the Insured and issued a life insurance policy (the "Policy") with a $1 million face amount. (*Id.* ¶ 19.)

The Insured died on September 19, 2023, within the Policy's contestability period of two years.[2] (*Id.* ¶¶ 21-22.) Following the Insured's death, Defendant submitted a claim to GIAC for the Policy's death benefit. (*Id.* ¶ 3.) As is routine when a beneficiary submits a claim for benefits

---

[2] The Policy provides that "[GIAC] will not contest this policy after it has been in force during the [I]nsured's lifetime for 2 years from its Issue Date [October 3, 2022], except for nonpayment of premiums." (Compl. ¶ 21.)

2

during the Policy's contestability period, GIAC conducted a contestable claim investigation, and discovered that the Insured had made material misrepresentations regarding his health and medical conditions. (*Id.* ¶ 4.) Specifically, GIAC discovered that: (1) the Insured had been diagnosed with severe aortic valve regurgitation on June 12, 2019 after a transthoracic echocardiogram was performed at Southern Illinois University Health; (2) physicians at Southern Illinois University Health recommended he undergo surgery for his condition; (3) on August 7, 2019, the Insured sought a second medical opinion regarding his heart condition, and physicians at OSF Glen Park confirmed his valvular heart disease diagnosis; (4) physicians at OSF Glen Park recommended that he be evaluated for surgical aortic valve replacement; and (5) the Insured was subsequently scheduled for a coronary computed tomography on August 23, 2019. (*Id.* ¶¶ 16, 24-28.)

In the Application, however, the Insured failed to disclose any of this information, and further answered "no" to questions asking whether he had been diagnosed with, treated for, or received a consultation regarding any disease or disorder of the heart, or had undergone any kind of diagnostic tests or been recommended for surgery within the past five years. (*Id.* ¶¶ 16-19.) GIAC contends that the Insured's misrepresentations were material, and that it would not have issued the Policy had the Insured truthfully disclosed this information in the Application. (*Id.* ¶¶ 34-36.)

After completing its investigation, GIAC "determined that the [P]olicy should be rescinded" and offered to refund the premiums paid on the Policy to Defendant. (*Id.* ¶ 6.) In response, Defendant contested that rescission of the Policy was warranted and "declined to negotiate the premium refund check." (*Id.* ¶ 31.)

### B. Procedural Background

GIAC filed the instant Complaint on August 23, 2024, seeking recission, *ab initio*, of the Policy (Count One) and declaratory judgment from the Court regarding the parties' rights and obligations under the Policy (Count Two). (Compl. ¶¶ 32-44.) On November 19, 2024, a representative from the Indian Central Authority served Defendant with the Summons and Complaint, and the Indian Central Authority confirmed service on November 21, 2024. (Certificate of Serv. *1-4, ECF No. 6.)[3] To date, Defendant has not pled or otherwise defended himself, and no appearances have been made on his behalf.

After the time for Defendant to file an answer had passed, GIAC requested that the Clerk of the Court enter a Clerk's default against Defendant. (ECF No. 8.) The Clerk of the Court entered a Clerk's default against Defendant on January 10, 2025, and GIAC thereafter moved for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).[4] (ECF No. 10.)

## II. <u>LEGAL STANDARD</u>

Rule 55 authorizes a court to enter default judgment "against a properly served defendant who fails to file a timely responsive pleading." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing Fed. R. Civ P. 55(b)(2); *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Entry of default judgment is left to the district court's discretion. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). A default judgment is a disfavored remedy because it does not resolve a plaintiff's claims on the merits. *See Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL

---

[3] Page numbers within a record cite that are preceded by an asterisk refer to the page numbers atop the ECF header.

[4] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Three assessments guide the Court's analysis. *See Victory's Dawn, Inc. v. Clemons*, No. 21-9744, 2022 WL 3402491, at *2 (D.N.J. Aug. 12, 2022). First, where a defendant fails to respond to a complaint, the Court must ensure that the plaintiff properly served the defendant. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). Second, the Court must ensure that "the unchallenged facts" within the complaint give rise to a "legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (quoting *DIRECTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). When conducting this assessment, the Court assumes as true all allegations in the complaint, except legal conclusions and allegations regarding damages. *See DIRECTV, Inc. v. Pepe*, 431 F.2d 162, 165 n.6 (3d Cir. 2005) (citing *Comdyne I, Inc.*, 908 F.2d at 1149). Third, the Court must determine whether default judgment is appropriate by weighing three factors (the "*Emcasco* factors"): "(1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default." *Trs. of UFCW Loc. 152 Health & Welfare Fund v. Avon Food, Inc.*, No. 17-2178, 2018 WL 372167, at *3 (D.N.J. Jan. 11, 2018) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987)).

### III. DISCUSSION

#### A. Jurisdiction

First, the Court must address the threshold issue of whether it has subject matter jurisdiction and personal jurisdiction over the parties. *See Prudential Ins. Co. of Am. v. Bramlett*, No. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). With regard to subject matter jurisdiction, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of New York

and Delaware, Defendant is a citizen of India, and the amount in controversy exceeds $75,000. (Compl. ¶ 11.)

The Court also has personal jurisdiction over Defendant. Because Defendant was not served while present in the State of New Jersey (*see* Certificate of Serv.), the Court must decide whether jurisdiction may be exerted over Defendant under New Jersey's long-arm statute, which tracks the constitutional due process inquiry. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998). The due process inquiry involves an assessment of whether a defendant established sufficient "minimum contacts" with the forum state so that the exercise of personal jurisdiction does not frustrate the concepts of fair play and substantial justice. *Int'l. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Having minimum contacts with a forum provides "fair warning" to a defendant that he may be subject to suit in that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

The Court must either have general or specific personal jurisdiction over a defendant. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). General jurisdiction applies when an individual is domiciled in the forum state. *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) ("[A]n 'individual's domicile,' or home, constitutes the paradigmatic 'forum for the exercise of general jurisdiction.'") (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." *Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Specific jurisdiction, on the other hand, allows a court to exercise jurisdiction over a non-resident defendant when: (1) the defendant purposefully avails itself of the privilege of conducting its activities within the forum; (2) the litigation arises out of or relates to

6

at least one of those activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *O'Connor*, 496 F.3d at 317.

At the outset, the Court finds that it lacks general jurisdiction over Defendant because GIAC does not allege that Defendant is domiciled in New Jersey. The Court, however, concludes that it has specific personal jurisdiction over Defendant. Determining the existence of specific personal jurisdiction involves a three-part inquiry: (1) the defendant must have "purposefully directed his activities at the forum;" (2) the plaintiff's claim must "arise out of or relate to" the activities defendant purposefully directed at the forum; and (3) assertion of jurisdiction must comport with the concepts of "fair play and substantial justice." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008) (quoting *Burger King*, 471 U.S. at 472, 476; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Here, Defendant sought to collect benefits from the Policy, which was contracted for in New Jersey and issued to a New Jersey resident.[5] By actively submitting a claim to GIAC for death benefits from a life insurance policy issued in New Jersey, and later disputing GIAC's determination that the Policy be rescinded, Defendant "purposefully directed his activities at the forum." *Quadrel v. Quadrel*, No. 22-6645, 2023 WL 8295200, at *1 n.2 (D.N.J. Dec. 1, 2023) (quoting *O'Connor*, 496 F.3d at 317) (finding specific personal jurisdiction over defendant was proper where defendant was a partial beneficiary of a life insurance policy in the forum state). Moreover, GIAC's claim arises directly out of Defendant's claim submission and contact with New Jersey. Thus, the Court finds that assertion of jurisdiction comports with the concepts of "fair play and substantial justice," and that exercising specific personal jurisdiction is proper. *See, e.g., Sun*

---

[5] The Insured was a resident of New Jersey, and the Policy was contracted for in New Jersey. (Compl. ¶ 12; Ex. A 52-53, ECF No. 1-1.)

*Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, No. 21-9959, 2023 WL 3309355, at *4 (D.N.J. May 8, 2023) (holding that specific personal jurisdiction over a defendant was proper where, among other factors, defendant was the beneficiary of a life insurance policy of the forum state and sought to collect a death benefit pursuant to that policy); *O'Connor*, 496 F.3d at 324 (alteration in original) (quoting *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998)) ("[I]f minimum contacts are present, then jurisdiction will be un[fair] only in 'rare cases.'").

**B.  Service**

Having found that the Court has jurisdiction over this matter, the Court next addresses whether there was proper service. Rule 4 governs service and provides that an individual must be served by a nonparty "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). Rule 4(f) further provides that "an individual . . . may be served at a place not within any judicial district of the United States: [] by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." *Id.* at 4(f)(1). Because India is a signatory to the Hague Convention, GIAC must have served Defendant by "serving process on the Indian Central Authority for the Hague Convention." *Cephalon, Inc. v. Sun Pharm. Indus., Inc.*, No. 11-5474, 2011 WL 6130416, at *2 (D.N.J. Dec. 7, 2011).

In this case, GIAC served the Summons and Complaint on the Indian Central Authority on September 10, 2024. (Decl. of Kate L. Villanueva ¶ 3, ECF No. 10-1.) On November 19, 2024, a representative from the Central Authority personally served Defendant. (Certificate of Serv. *3-6.) On November 21, 2024, the Indian Central Authority confirmed that the documents had been personally served on Defendant. (*Id.* at *1-4; Decl. of Kate L. Villanueva ¶¶ 5-6.) Nothing further

in the record suggests that this service was improper. This Court, therefore, concludes that Defendant was properly served in accordance with the Rules.

C.  **Legitimate Cause of Action**

The Court next evaluates whether GIAC has established a "legitimate cause of action." *Gordashevsky*, 558 F. Supp. 2d at 536. Taking the allegations of the Complaint as true, GIAC has established legitimate causes of action seeking recission, *ab initio*, of the Policy (Count One) and for declaratory judgment under 28 U.S.C. § 2201(a) (Count Two).

1.  *Recission of the Policy (Count One)*

Under New Jersey law, an insurer "may rescind a policy for equitable fraud when the false statements 'materially affected either the acceptance of the risk or the hazard assumed by the insurer.'" *Ledley v. William Penn Life Ins. Co.*, 651 A.2d 92, 97 (N.J. 1995); *see also* N.J. Stat. Ann. § 17B:24-3(d). "To rescind a policy, an insurer need not show that the insured actually intended to deceive." *Ledley*, 651 A.2d at 95. Moreover, "the cause of death need not be causally related to the misrepresentation in the application." *Am. Gen. Life Ins. Co. v. Garcia*, No. 07-3179, 2009 WL 2905372, at *2 (D.N.J. Sept. 10, 2009).

Misrepresentations "regarding an insured's health and medical condition" are material "where knowledge of the truth would naturally influence the judgment of the insurer in making the contract[.]" *Id.* at *3 (citing *Parker Precision Prods. Co. v. Metro. Life Ins. Co.*, 407 F.2d 1070, 1073-74 (3d Cir. 1969) (internal quotation omitted)). Further, as stated by the Supreme Court of New Jersey:

> [t]he prior medical history of an applicant is naturally and logically a most material matter to a life insurance company which has been asked to underwrite a death risk, and the working rule is that inquiries propounded in the applicant form, and the truthfulness and completeness of answers thereto touching [a] physical condition and pathological history of the applicant, are material to the risk as a

9

matter of law and such materiality is not the subject of a finding of fact by a jury.

*Gallagher v. New Eng. Mut. Life Ins. Co. of Boston*, 114 A.2d 857, 861 (N.J. 1955).

GIAC points to several material misrepresentations made by the Insured in the Application. The medical records GIAC received after the Insured's death revealed that, within the five-year period leading up to the Application, the Insured underwent a transthoracic echocardiogram at one medical facility, was diagnosed with severe aortic valve regurgitation, and was recommended for surgery. (Compl. ¶¶ 24-28.) In addition, physicians at a second medical facility confirmed his heart condition, recommended he be evaluated for surgical aortic valve replacement, and scheduled him for a coronary computed tomography. (*Id.*) Despite these consultations, diagnosis, and treatment, the Insured answered "no" to questions asking whether: (1) he had been "diagnosed with, treated for, tested positive for, been given medical advice by a member of the medical profession or received a consultation or counseling for . . . any [] disease or disorder of the heart, blood vessels or circulatory system;" (2) he had received a "physical exam, check-up of any kind or diagnostic tests" within the past 5 years; (3) he had been "advised by a member of the medical profession to have surgery or any diagnostic tests that were not performed" within the past 5 years; and (4) he was currently receiving or had in the past 5 years "received medical advice, counseling, or treatment for any medical . . . condition [from] a medical professional or ha[d] been a patient in a hospital . . . or other medical facility." (*Id.* ¶¶ 15-18; Ex. A *61-63 (alteration in original).)

GIAC argues that the above misrepresentations in the Application are material in that GIAC would not have issued the Policy had the Insured accurately disclosed information relating to his severe aortic valve regurgitation. (Pl.'s Moving Br. 4-6, ECF No. 10.) In other words, the misrepresentations the Insured made in the Application influenced GIAC's judgment in determining whether to assume the risk applied for by the Insured. Based on the facts alleged and

assuming them as true, it appears that the Insured materially misrepresented his medical history in the Application, and that GIAC would not have issued the Policy had the Insured accurately disclosed information regarding his heart condition and treatment. The Court thus finds that GIAC sufficiently pleads a claim for rescission of the Policy, *ab initio*. (*Id.* ¶ 29); *see Am. Gen. Life Ins. Co.*, 2009 WL 2905372, at *4 ("As the application for insurance contains material misrepresentations that, if known, would have resulted in the non-issuance of the [p]olicy, [plaintiff insurance company] is entitled to rescission.").

### 2. *Declaratory Judgment (Count Two)*

Relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is predicated on the existence of an "actual controversy," a "live dispute," or "a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1170 (3d Cir. 1987). As noted above, GIAC has pled the existence of an actual controversy concerning the rights and obligations of the parties under the subject Policy. Thus, GIAC adequately states a claim for declaratory judgment. (Compl. ¶¶ 1, 39-41); *see* 28 U.S.C. § 2201(a) (providing that under the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party").

### D. Entry of Default Judgment is Appropriate

Next, the Court considers the following *Emcasco* factors to determine whether to grant a default judgment under Rule 55(b): "(1) prejudice to the plaintiff if default is denied[;] (2) whether the defendant appears to have a litigable defense[;] and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Hill v.*

*Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003). The Court examines each factor in turn.

Regarding the first factor, "[w]hen a defendant fails to respond to a plaintiff's claims, the plaintiff will be prejudiced absent a default judgment because [the] plaintiff will be left with no other means to vindicate his [] claims." *United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016) (citation omitted); *see also Slaughter v. Moya*, No 17-6767, 2018 WL 3742622, at *3 (D.N.J. Aug. 7, 2018) ("[B]ecause [d]efendant has failed to appear, [p]laintiffs suffer prejudice if they do not receive a default judgment because they have no other means of vindicating their claim."). Here, Defendant has not pled or otherwise defended himself in any manner since being served with process on November 19, 2024. (Certificate of Serv. *1-4; Decl. of Kate L. Villanueva ¶¶ 5-6.) Defendant has had ample time to respond to Plaintiff's Complaint. The Court finds that denial of default judgment will prejudice GIAC because it would be faced with an indefinite delay and have "no alternative means of vindicating its claim against the defaulting party." *Avon Food, Inc.*, 2018 WL 372167, at *3 (alteration in original). Accordingly, the first factor weighs in favor of GIAC.

With respect to the second factor, the Court considers a defense meritorious when "allegations of [the] defendant's answer, if established on trial, would constitute a complete defense to the action." *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Here, Defendant has not filed an answer and the Court is therefore "unable to evaluate whether [he has] a litigable defense[.]" *Hill*, 69 F. App'x at 52. Thus, the second factor is "inconclusive." *Id.*

As to the final factor, in the context of a default judgment, "culpable conduct means actions taken willfully or in bad faith." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d

12

Cir. 1983) (citing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982)). Defendant's failure to respond "permits the Court to draw an inference of culpability on [his] part." *JUUL Labs, Inc. v. Zoey Trading LLC*, No. 21-19299, 2022 WL 970412, at *6 (D.N.J. Mar. 31, 2022). Accordingly, the third *Emasco* factor weighs in favor of GIAC.

Balancing the three *Emasco* factors and weighing all considerations, the Court finds that default judgment in favor of GIAC against Defendant is appropriate. *See Joe Hand Promotions, Inc. v. Waldron*, No. 11-849, 2013 WL 1007398, at *4 (D.N.J. Mar. 13, 2013) (finding that factors weigh in favor of default where there was no indication of a cognizable defense to plaintiff's claims, plaintiff had no alternative means of seeking damages, and defendants failed entirely to respond).

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Default Judgment is granted.[6] The Court will issue an Order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff requests that the Court award it costs "associated with bringing this lawsuit, as determined by the Court." (Proposed Default Judgment 3, ECF No. 10-2.) The Court is not in a position, however, to award costs because Plaintiff did not demand a sum certain in the Motion. Plaintiff also cites no statute, rule, or other legal grounds entitling it to an award of attorneys' fees. Thus, the Court will deny without prejudice Plaintiff's request for costs and attorneys' fees. *See Trio Dying & Finishing Co. v. Mimarc Indus.*, No. 95-4129, 1995 WL 612914, at *3 (E.D. Pa. Oct. 12, 1995) (denying plaintiff's request for costs and attorneys' fees where plaintiff failed to provide the court with an estimate of costs incurred).